IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

July 13, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| ALLEN BULLARD and WANDA BULLARD, et al., | ) | C/A NO. 03A01-9809-CH-00310 |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| | ) | |
| | ) | APPEAL AS OF RIGHT FROM THE |
| v. | ) | HAMILTON COUNTY CHANCERY COURT |
| | ) | |
| | ) | |
| | ) | |
| DEWAYNE SCOTT AND RHONDA SCOTT, et al., | ) | |
| | ) | |
| | ) | HONORABLE R. VANN OWENS, |
| Defendants-Appellants. | ) | CHANCELLOR |

For Appellants

DONALD MART LASLEY
Chattanooga, Tennessee

For Appellees

DAVID W. WALLACE
Chattanooga, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                    Susano, J.

1

This controversy focuses on a subdivision lot that is owned by numerous tenants in common. The lot in question, Lot 10, with dimensions of 196.14' x 100.4' x 245' x 160.2', is located in Thatcher Shore Acres Subdivision in Hamilton County. Significantly, it has water access to Chickamauga Lake. In 1981, it was conveyed to the plaintiffs or their predecessors in title, 38 of the 39 property owners of Thatcher Shore Acres Subdivision, by the subdivision's developer, James C. Thatcher. By such conveyance, each of the grantees received an undivided 1/39th interest in Lot 10. Such an interest -- a 1/39th -- was also conveyed to a predecessor in title of defendants Dewayne and Rhonda Scott ("the Scotts").

The Scotts purchased a lot in a nearby subdivision, also developed by James Thatcher, which is referred to as Thatcher Shore Acres Lots 41 through 68, or the second Thatcher Shore Acres Subdivision. A third development, known as the Lasley Subdivision, was also developed on adjacent property subsequent to the development of the two Thatcher Shore Acres subdivisions. The second Thatcher Shore Acres Subdivision and the Lasley Subdivision also contained community "out lots" with water access; however, the "out lots" in the latter two subdivisions were ultimately sold in tax foreclosure sales. Thus, the property owners in these two developments apparently were left without any community lake access.

The Scotts initially purchased Lot 41 in the second Thatcher Shore Acres Subdivision. However, they subsequently purchased Lot 39 in the original subdivision and thereby acquired

2

their grantor's 1/39th undivided interest in Lot 10 of that development. Shortly thereafter, the Scotts conveyed a 1/7800th interest in their 1/39th interest in Lot 10 to property owners in the second Thatcher Shore Acres Subdivision and the Lasley Subdivision.[1]

Following the Scotts' conveyances, the plaintiffs filed this action against the Scotts and their grantees, seeking to void the various conveyances by the Scotts, as well as to recover punitive damages, attorney's fees and costs. Following a bench trial, the trial court found that, although the Scotts' deed to Lot 39 did not contain a prohibition against subdividing their undivided 1/39th interest in the lake-access lot, such action clearly had the effect of placing an additional burden on the property, to the detriment of the Scotts' co-tenants. Consequently, the court held the conveyances to be void and of no effect. It awarded nominal compensatory damages of $10 and punitive damages of $5,000 to the plaintiffs. The court subsequently set aside the award of punitive damages.

The Scotts appealed, raising the following issue for our consideration:

> Does Tennessee law allow a fee simple co-tenant with an unrestricted fractional interest in a common lot to convey fractional interests to third parties, and did the Chancellor err by voiding such a conveyance?

---

[1] The deed representing the subject conveyance indicates that the Scotts are conveying "a portion of [their] 1/39th...interest." However, it would appear that the grantees received an undivided 1/7800th interest in Lot 10 rather than 1/7800th of 1/39th interest in that lot.

3

The plaintiffs urge us to uphold the trial court's decision voiding the subject conveyances, but to reinstate the award of punitive damages and award them their reasonable attorney's fees.

The Supreme Court, in describing the rights and duties of co-tenants, has quoted with approval the following excerpt from Tennessee Jurisprudence:

> Tenants in common stand in a confidential relation to each other as to the joint property, and the same duties are imposed on them as if a joint trust were created by contract between them.  In such case, the relation of trust and confidence between them binds all to put forth their best exertions to protect the common interest, and forbids the assumption of a hostile attitude by any of them towards the rest.
>
> The possession of one is the possession of all unless he claims to hold exclusively for himself.  Tenants in common are jointly seized of the entire estate, each having an equal right of entry, and the possession of one is regarded as the possession of all until a disseisin of the others by actual ouster.  Each has the same right to the possession, and the title of each extends to the whole.

*Headrick v. Carter*, 897 S.W.2d 256, 259-60 (Tenn. 1995)(quoting 8 TENN.JUR. *Cotenancy* § 6 (1992) (emphasis in *Headrick* omitted)).

Generally speaking, the applicable law regarding the conveyance of a co-tenant's share is correctly stated in 8 TENN.JUR., *Cotenancy* § 9:

> A joint tenant may dispose of his share and convey it to a stranger, who will hold undivided, and in common with the other owners.

4

The Scotts assert that a lawful conveyance, by definition, can never be a hostile act. While this may be generally true, a lawful conveyance under certain circumstances can have such a severe adverse impact on the other co-tenants' known use of the subject property that it can only be considered a "hostile" act against the co-tenancy. Such is the situation in the instant case.

Prior to the conveyance at issue, this relatively small subdivision lot was burdened only by the comings and goings of people associated with 39 property owners. However, as a result of the subject conveyances, the potential use of this lot was approximately doubled, rendering it subject to use by over 40 additional property owners, the members of their households, and potentially their invited guests. In fact, to uphold such a conveyance would conceivably increase potential use of the lot exponentially, given that any other co-tenant -- whether a holder of a 1/39th or 1/7800th interest -- could similarly subdivide his or her interest. Calculation of the ultimate number of potential users of the lot is subject only to the bounds of one's imagination.

It is therefore the opinion of this court that, under the unique circumstances of this case, the conveyances in question constitute an "assumption of a hostile attitude" by the Scotts against their co-tenants, and a violation of the "relation of trust and confidence" binding each tenant "to put forth [his or her] best exertions to protect the common interest [of the co-

tenancy]."  *See **Hendrick***, 897 S.W.2d at 259-60.  As such, they cannot be allowed to stand.

We do not find that the evidence preponderates against the trial court's ultimate decision not to award punitive damages and attorney's fees.  Rule 13(d), T.R.A.P.

The judgment of the trial court is affirmed.  Costs on appeal are assessed against the appellants.  This case is remanded to the trial court for such further action, if any, as may be required, consistent with this opinion, and for the collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Herschel P. Franks, J.


_____
William H. Inman, Sr.J.